Please rise. This court is now in session. Please be seated. And we will call the next case, please. 3-11-0385, Equal Education of a Non-Catholic by Robert Hanson v. Billy v. Max, Appellant by Jeffrey Tomczak. Mr. Tomczak. May it please the court. Counsel for the prosecution. Co-counsel. Ladies and gentlemen of the court, I'd like to start my argument with your position this morning on the issue involving the plain error rule and discussing the evidence, whether it's closely balanced in this case or not. It seems to be a good starting point in my mind is that it's an issue that can permeate through the other issues that we've raised in this appeal. So I asked the court to consider this case from an objective standard based on the record. What do we have here? We have a theft from an ATM machine. Two people clearly have access to the machine. One is the defendant. The defendant gets in a dispute with her employer, and after being asked to apologize personally to the employer, she resigns her position with obvious hard feelings between her and the company owner. The company owner happens to be the sheriff's brother and the sheriff's jobber, meaning they sell gasoline to the sheriff's gas station that he owns. All of a sudden in about a week, a few days afterwards, money is determined to be missing and it's being investigated. Not by the Mazan Police Department, which is the department where the bank is located, interestingly enough, but the case is ultimately handled by the Grundy County Sheriff's Police, what we would submit would be the conflicting agency. So the matter is being investigated by the owner's brother's police department. The defendant says to the investigator that the machine malfunctions, and I reported it several times. Needless to say, she is arrested. The physical evidence in this case, Your Honors, consisted of three pieces of physical evidence, if that's what we want to call it. One of them is records that are transmitted from the ATM machine over the Internet to what I guess I'm going to refer to as the cloud, some giant mainframe computer system that is detailing where the money is being dispensed. The other bit of physical evidence is printouts that I must, I would assume, similar to what we get when we go to an ATM machine. They're printed out, we slip it in our pocket, we know what our balance is. That's the second item. The third item of physical evidence in this case was the machine itself, specifically the dispenser. The dispenser is a part of the machine, as you might imagine, spits the money out. If that thing's malfunctioning, because this machine is so unique what it is, you're not going to get a lot of people complaining, depending on which way it's malfunctioning. If it's malfunctioning, keeping money from you, well, I think you'll hear about it, but if it's dispensing additional money, just the nature of this machine might be such that, sad as it is, people might not admit it, might walk away with the funds. At the time of trial, and despite the fact that this defendant was arrested, about two weeks after resigning, two to three weeks after resigning, if my recollection is correct, two of the three items of physical evidence are gone at the time of the trial. We have a summary of the records that were contained in the cloud, but those details, and they're called details in the record, those details don't exist any longer. So all we had was the summary. And Mr. Navarro asked, but is that all we have is your summary? And she's like, well, yeah, we know it's right. The other item that's gone is the dispenser. It was replaced because it malfunctioned, obviously. But it's nowhere around. So we have no ability here to examine this machine, and that's found in the record on page 456. Now, it's also interesting when we look at the facts in this case, there is testimony at the record on 227 to 228 by the state's expert that this company had paid out in the past because of faulty dispensers, consistent with what the defendant in this case was saying. That's a very important point. I would also submit in this case, if we are going to look at the balanced evidence aspect of it, what I ask you to look at, there's two people with access to it. The gentleman's name is C. Bright, and he's the manager, and Billy Max is the worker, the other person that has access to it, the defendant. And I do respectfully submit to the counsel for the prosecution, if there's one fact on this record that would indicate that Billy Max had more or different types of access or any evidence that indicated outside of what the same evidence would be against C. Bright, there isn't any. It's exactly the same evidence. This case boils down to the ATM machine. Someone's determined, with the missing evidence, that $60,000-plus are missing, and Billy Max took it. And that's the end of it. Even though these two individuals stand in perfect equal standing as to having the ability to take things out of this machine. No one sees anyone take money out. No one does a cash audit of either of these two individuals. In fact, the evidence shows that C. Bright is never identified. The agency simply determines that it's Billy Max that took the money and lets go to trial in that regards. We also have to consider that the agency in this case, and I mean no disrespect to anyone, but there could have been a potential bias in the investigation of this case. I have to put it in the simplest terms, and I would ask you, if someone has a problem with your brother, do they have a problem with you? And that's what we had in this particular case. You had an individual employer who had been asked to apologize to the boss, and she said no. There's no reason for me to apologize. So in our estimation, we submit that the evidence is fairly close in this case. And getting on to the remaining arguments, I ask you to take into consideration, as it goes, the heart of hearts argument we've raised there. Not a phrase that necessarily would automatically raise an eyebrow in someone's mind to say, hey, you know, what do you mean heart of hearts? That doesn't seem to be inflammatory in any way. But in this particular context, I would submit to the court it does raise to the standard where it would have made a difference to the jury. There's no question that this phrase, heart of hearts, directs itself more to the emotional than to the logical. But maybe really the context is the key, not the phrase. And I ask the court to indulge me for a moment. Phrase number one, when you weigh the evidence and you apply your common sense and your life experience, you'll know in your heart of hearts that we have met our burden. We all know better. Second, compare it to this. We all know better in our heart of hearts exactly what went on here. And when you know inside your heart of hearts, you know we have met your burden of proving Billy Mac's guilty beyond a reasonable doubt, and we don't have to show where she spent the money. We don't have to show where she brought the car. We don't have to show that she brought a wardrobe. We don't have to show that she brought any of that stuff. So in the context of how it was presented, it's really being presented as trust your heart. We don't have to prove this evidence. Trust your heart. And as I argue to the court, as I submit, the first context is use the evidence to convince your heart. The second context that was used in this case is use the heart to make the decision and don't worry about the evidence. We don't have to prove it. In essence, beyond a reasonable doubt is change from a focus on the quantity and the quality of the evidence to a gut feeling without regard to what may or may not have been proven. And it's in that regard, Your Honors, that I submit that that particular argument in this context raised to the level where, especially in the absence of the evidence in this case, could have truly affected the verdict of the jury in this case. The state has also waived the issue of default, and I'm going to make an argument that I will have to admit to this court. It hit me about a day ago, and it's not contained in our brief, but it's unique because I have to say this. If I did not put it in the record, Your Honor, I would be waiving my argument about the state, waiving its argument regarding waiver. And I apologize to whoever has to make this transcript up, but that's the truth. But the bottom line here is this. The state made no argument on the motion for new trial, either the original or the supplemental, on the issue of waiver of objection. And I thought to myself, does the standard that the defendant has hold to the state? Doesn't the state have to raise waiver at the hearing for a motion for new trial, or is it waived? But it goes further than that, and Mr. Ellis makes an interesting move on page 849 of the record. And I believe this may have raised it to the level where he didn't do that. Before Ron Ellis rests on his motion for a new trial, he does this. He makes a motion asking the court to take judicial notice of the entire transcript and testimony of the original trial. He incorporates it all into the motion for new trial. Now, I'll leave it to this court's judgment what effect that may or not have had, but we would urge the court that that possibly opened the door and released the waiver argument. Why would we need to incorporate all of that evidence in on a motion for new trial by way of judicial notice? That would mean, in my mind, as if it was presented during the trial. So we don't argue it, and we bring all of that evidence back into this motion. I would submit to the court that those actions itself may have waived the ability of the state to make the waiver argument. Now, on the special prosecutor issue, if the court will allow me to proceed, this is an issue that kind of permeates the entire case, as I would submit, from start to finish. But I would ask the court, I think we can boil down the issues in this case, as far as the special prosecutor issue goes, to asking ourselves just a few questions. And the first is this. Should the sheriff be investigating crimes where his brother is the victim? Secondly, should the sheriff be investigating crimes where the victim's company has a financial relationship with his private business and that relationship can have a financial impact on him? Thirdly, does the two facts taken together result in the appearance that a conflict, really a bias would be the best answer, may have existed? Now, this is where I think it goes further. If the sheriff, not being a lawyer, has to make a decision to decide, you know, should I be doing these cases? I mean, this is my brother's company involved here. Who does he go to? He goes to the prosecutor. He goes to the state's attorney. He goes to his lawyer to advise him as to whether he would have a conflict or not. And the case law in this regards, as your honors well know, it's not about the integrity of an individual in this system. The special prosecutor rules involve the integrity of the entire judicial system, and that would, of course, incorporate any sheriff's office if it would be in this case. So what we're alleging in this particular case, if you look at it, the whole thing from start to finish, we have a financial relationship between these two individuals. We have a family relationship between these two individuals. We also have a different department that should have been investigating this case that was not. It was actually transferred into the conflicted department. So my suggestion to the court would be that in this particular instance, it would have been proper to make a motion for a special prosecutor to look at it, to raise the issue, because these are multi-issues. We've got ineffective assistance led in here, too. And as I said earlier, the reason I believe this would go all the way through the case because every witness would be subject to this question. But is it more a question of a special prosecutor or are those great arguments to make to the jury? Judge, I think it is an issue of a special prosecutor because if a prosecutor looked at it and was presented with the question, does this impugn the integrity of the judicial system? Now, either the state's attorney of Grundy County, if asked, would be required to make that decision, or he could have simply said, let's give it to a special prosecutor and let him make the decision. Because the point would be a special prosecutor may actually look at it and say, let's get the Illinois State Police in here, or let's do something different. Let's preserve the dispenser, for example. Let's preserve or document those records that were destroyed in the cloud. What I'm saying is, Judge, you can't get a special investigator. As Your Honor well knows, you can't substitute out the Sheriff's Department. The only recourse in this particular circumstance that the defendant might have would be to seek the appointment of a special prosecutor and then have that person globally review it as far as the investigative force and all other things involved. That would be my answer to your question, Judge. Also, I'd like to take a minute to talk about some of the ineffective assistance issues. On the sidebars, I would say to the court, I can't understand, and I cannot think as a trial lawyer for as many years as I have been, what would be the reason you would not want to document sidebars? It's kind of a general question of law that the court is confronted with in this particular case. Is it ineffective not to document your sidebars if you're a trial lawyer? I will be honest with the court and say I didn't notice any of the objections to be kind of devastatingly against the defendant in this case, but the sidebars were not documented. And I wouldn't even say this. Regardless, the lawyers all know what's going on, the judge all knows what's going on, and we can put faith that they're battling their sides and doing their jobs, but here's another problem with that. The defendant never heard that. The defendant sat in that trial and he did not know and now had no way of ever knowing what was going on at those sidebars. So I think that that's an instance where, whether it's ineffective assistance of counsel or it raises to the level of a fair trial or a due process type argument, it's important in that context because, as we well know, the defendant should know everything that's going on in this trial and be aware of what's being discussed by his counsel. The use of the expert, I have to say to the court, and it's so easy to look back as a Monday morning quarterback and look at other people's work and what should have been different, but the expert is important. They had an expert that said, that was ready to testify, that if you don't review the machine, you cannot tell if it's dispensing. Now, Mr. Navarro decided not to call that witness, but that witness was so important for multiple reasons. Pre-trial motions. If that witness was correct, the state's quote-unquote expert, who I think was really an occurrence witness, would have never been able to testify. Her opinion could have been barred that these records were accurate because their expert challenged it and said, you can't know those records are accurate. All she did, judges, compared the cloud records to what printed out on the machine and said, hey, money's missing. And her expert said, no, you've got to look at that dispenser in order to come to that conclusion. Mr. Navarro never decided to put that forward. Here's another point. What about a Cladis motion? This court's case law in Cladis, which has now been approved by the Supreme Court, would have barred that evidence. It was destroyed. If that dispenser was malfunctioning, that may have been evidence to negate the guilt of the defendant. So, again, that expert could have helped Mr. Navarro in, for example, a Cladis motion. Where is the records? I only have one set now. I can't compare to what was in the cloud. Where is the dispenser? And that's evidence that could have helped the defendant. I would have expanded it into a Cladis-type situation. And thirdly, the expert could have been used just simply to attack the state's expert to say, as I said earlier, you have to look at that dispenser in order to see if it was dispensing improperly. And there was evidence in the record, Your Honors, that that had happened in the past, not with this dispenser necessarily, but the lady did testify there has been occasions in the past where Welch, who's the company's name, had to pay out because of faulty machines. Thank you for listening. Thank you, Mr. Consoff. Mr. Hanson. Good afternoon, Your Honors. May it please the court, counsel. To begin, pretty much as my opponent did, as to the reasonable doubt argument, that was very terse in her brief, see pages 23 and 24, and I capsulize it at pages 22 and 23 of my brief. The reasonable doubt argument here, as it applies to the reasonable doubt issue and as to the first prong of plain error, is really a very minimal argument. Specifically, I would argue, as presented in the brief, and keeping in mind that favorable standard for the prosecution, the Collins standard, there is zero evidence, Your Honors, that Mr. Seabright took the money. To put him in here is truly a red herring. Turning to the issues in the order they're raised in the brief, not in the order they're raised in the brief, after I discuss one more thing about reasonable doubt, I've told you how terse the evidence was. Indeed, in our brief in argument one, I set out the evidence in more detail. Simply stated, there's no way $64,000-plus was lost because the machine might have occasionally over-dispensed. Over-dispensed $64,000? It was the defendant, under the unequivocal testimony, who had charge of the money, no one else. And on the evidence, it was only the defendant who could have taken it. As to the prosecutor's argument, we made our plain error argument. You know the law of plain error as well as I do, the two prongs. It's in my brief. I won't bore you with more of that at trial. The prosecutor has great latitude in closing argument. The defendant would give him very minor latitude. There is no new trial because of a closing argument unless the result would have been different without it. Everything I say here is supported by case law in my brief, Your Honors. The judge instructed the jury greatly that closing arguments were not evidence. Kleiner said this alleviates prejudice. The jury was instructed extensively about the people having the burden to prove the defendant guilty beyond a reasonable doubt. That was said by the judge and by the prosecutor in his argument. The argument was proper in and of itself. It did not attempt to define reasonable doubt. It did not attempt to minimize reasonable doubt. The argument was just that people had proved the defendant guilty beyond a reasonable doubt, and the prosecutor uses those words ad nauseum, which the jury should know in its, and I guess this is the nub of the complaint, quotes and quotes, heart of hearts. This was said in explaining that the people did not have to prove what the defendant did with the money. It was invited by defense counsel's argument that he made, and I suppose I may well have made it too, that nothing showed the defendant spending beyond her means. The prosecutor pointed out, hey, that's not part of our burden. He was just saying the high burden of proof beyond a reasonable doubt, he said it was a high burden, has been met. I've discussed with you already why the evidence was not closely balanced in my brief and in my comments here today, and again, would emphasize the terseness of the defendant's reasonable doubt argument in his brief. As to appointing a special prosecutor, again, we argued that was waived and no plain error because plain error was not argued below, but I will leave that to your honors. Again, the law of that is in my brief. The Grundy County Sheriff was the brother of the president of the victim, M.K. Oil, Inc., and as the owner of a gas station himself, bought gas from the victim. No reason here for a special prosecutor. The relationship at issue was one between the sheriff and the victim, not the state's attorney and the victim. The authority that we're both talking about to you in our briefs before the court involves the state's attorney. That the victim donated to the state's attorney's re-election campaign in Grundy County after the conviction is meaningless. It's a small county. Everybody knows where Grundy County is in its sizes. Businesses often contribute to a local state's attorney's campaign. That, in and of itself, is dispositive of absolutely nothing. It's when the state's attorney is interested, and that's the nub of the law, that the judge may appoint a special prosecutor. That's under the statute 5-3908. The statute looks to the state's attorney's personal interest. The cases we cite show that courts look to whether the state's attorney is considered interested, namely, interested as a private individual, interested as part of the litigation. The limits are very narrow. The two cases the defendant relies on, the state's attorney, and again, I hope I'm not doing that too much, had significant conflicts. In one, the assistant state's attorney was both the complainant and an eyewitness. In another one, the state's attorney was marrying the niece of the defendant's expert. Self-evident problems there. What the defendant advocates here in saying there should be a special prosecutor is poor policy. One should not be able to steal from a victim who has a relationship with the sheriff and then preclude the main prosecutor, the prosecutor most likely to be able to effectively prosecute a case, from prosecuting rather than have a special prosecutor who would have a learning curve that the state's attorney wouldn't have. Also, the defendant here presented a deputy sheriff as a witness. She had no state's attorney's problem in this case. A deputy sheriff testified in her behalf. As to the argument about ineffective assistance of counsel, this will conclude my comment, Your Honor, nothing, and I mean zero, in the record supports ineffective assistance of counsel and not making a record of sidebars. Again, as I argued, there was no need for a special prosecutor. There couldn't have been ineffective assistance by definition in that regard. The law of ineffective assistance, Your Honors all know, the Strickland standards set out my brief. I won't bore you with it again. Regarding the lack of sidebars, the defendant suggests that there was, suggests no error. He doesn't mention any error that would have been put before this court had there been sidebars. No error that occurred in the sidebars that was not brought out. The defendant did not attempt to make a bystanders report or an agreed statement of facts, perhaps with the help of the prosecutor, together to come up with what went on in those sidebars. We don't even know the number of the sidebars, anything that was discussed. We know zero about them, and this is so completely speculative, it should not get very long consideration from this court, I respectfully assert. It is the defendant's responsibility to present a sufficient record. Also, clearly there was no error here based on what counsel himself said when questioned about this. He said it was his practice to make a sidebar record if there was an issue necessary to preserve on the record, and by definition that means there was no such issue here. He was subject to cross-examination on that. Again, there's just zero about any sidebar problem here other than the defendant attempting to create something out of whole cloth. It was a strategic choice, as counsel explained, Mr. Navarro, not to have an expert witness regarding the ATM. Even the defendant herself testified that the proposed expert told counsel that the paper trail of numbers was accurate, but just without seeing the ATM, there was no way to state without a doubt exactly what was meant by a faulty dispensing unit. That's all she said. The defendant said the expert agreed the loss was $64,000 plus. That's the same as the people's expert. My lord, your honors, if you cannot see why counsel could decide this is my expert, no way am I putting her on the stand. There's certainly enough there to make his decision on that point reasonable. He added to what I've said here by his testimony. He said the expert told him all the bank records were in order. They consulted many times. Obviously he's considering putting her on. She reviewed the records of the ATM and the bank records. She got all she asked for to do her investigation. He said that if called, she would not have said that witnesses actually seeing this ATM, that without, I'm sorry, she would not have said that without actually seeing the ATM, it would not be possible for one to determine whether or not it improperly dispensed money. She would not have said that. It was never an absolute requirement with the expert that the expert view the machine to state an opinion. He chose not to call her as she was not favorable. This is all his testimony I'm relating to you. He said the defendant told him someone once received one or two $20, 20s he called them, more than they should have gotten from the ATM, but that couldn't be verified. The dispenser by the time of trial was not in the same condition as when the defendant worked there. He asked many times of the defendant if more than one person said he got extra money from the ATM, and no one, he stated it as no one, no one could recall that happening. The judge, hearing the matter, found the counsel did not call this expert as she was not helpful. Your honors, that was obviously, in my humble opinion, the correct result, but in any event, under the standard of Strickland, it was a reasonable result. It was a strategic choice counsel was entitled to and did make. The judge below said counsel did a good job. He simply made a strategic decision which he should not be criticized for now. That concludes my comments, your honors, unless you have any questions. Thank you very much. Mr. Townsend. Mr. Townsend. Your honors, I think I hopefully proved my point when I said if there was any evidence against Seabright that was different than the evidence against Billy Mac said, let's bring it forward, there isn't any. It's literally two people have the key to the same item. One has more obligations to handle money in and out, but both have exactly the same aspect, the ability to get in and to take money out, both of them do. There's no difference between these two individuals as it relates to how close the case is, and nor will you hear any facts that makes it different, and that's because there wasn't an investigation done in this case. The sheriff's department made a decision that the person that just resigned must be the person that stole this money. Unequivocally, it was directed in that direction. We had a department which we submit had a potential bias, directed it at her, and all the guns were pointed in that direction, and that's the way it went from the very beginning. And that, I think, is part of the issue in this case. As far as the expert witness is concerned, I do want to note one last thing to the court, and that is that Attorney Navarro testified about the money and the idea of not calling that expert. This is what he said. Question, Ms. Spiegman. So the loss of this sum, like over $64,000 she was indicating, was accurate. He says the paper trail aspect, yes, and that amount, correct. For the numbers that we figured out, yes. And she indicated the item that she could not address was the issue of whether there was a faulty dispensing unit without viewing the dispensing unit, correct. The issue that I had asked, it was reported by the Welsh company it was a faulty unit. So that's what he testified to. The bottom line is your client tells you, listen, I didn't take the money, this thing's been to me, I don't know where it is, she wouldn't if she didn't, but all I know is this thing dispenses money occasionally over. That's all I know, and I made complaints about it. The complaints were verified, but a choice was made. The choice was simply made by this department, the Sheriff's Department, not the Bizon Police Department, that it was Billy Max that took the money and not anyone else. It couldn't have been a mistake and it couldn't have been anything else. I'm going to end with one last point. Their own expert said this, that balancing this machine does three things, and I ask you to consider this, three things. The first is to determine, to make sure that the gas station gets as much money out as they get in. The second is to make sure that the machine is working properly, and this is in the state's brief, I think, on page 9, to make sure that the machine's working properly. And the third reason for doing the audits, the balancing, is to see if anyone stole. Think about those three things.  Or somebody stole it. It's one or the other. And based on the facts in this case, you can't tell which one it is, and you also can't tell which one of the two because there's no evidence pointing the finger any differently at one other than the other, other than a decision by the department of who took it. So I think there's two points in this case that I ask the Court to focus on. What was gone, what evidence was there, what wasn't, the expert, and how the expert could have been utilized, and secondly, how closely balanced these facts really were. And I should thank you for listening this afternoon. Thank you, Mr. Tomczak. Why was this case transferred? Judge, we don't know. Initially, Mazan came in and spoke with the client. She was taken over to the Bruny County Sheriff's Department, and she's arrested by Bruny County Sheriff. Thank you. Thank you, Mr. Tomczak. Mr. Hanson, thank you. The matter will be taken under advisement. A written disposition will be issued. Right now, the Court will be in recess for lunch and will reconvene at 115.